IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DONALD CIKRA, *et al.*, | : | |
|  | : | |
| Plaintiffs, | : | 2:15-cv-06166-WB |
| v. | : | |
|  | : | |
| LAMI PRODUCTS, LLC, | : | |
| Defendant. | : | |
|  | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF THE CLASS/COLLECTIVE
ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE
PROPOSED SETTLEMENT CLASS/COLLECTIVE, AND APPOINTMENT
OF INTERIM CLASS COUNSEL**

Date:  June 22, 2016

Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Harold Lichten *pro hac vice*
Peter Delano *pro hac vice*
Lichten & Liss-Riordan, P.C.
729 Boylston Street. Suite 2000
Boston, MA  02116
(617) 994-5800

*For Plaintiffs*

## TABLE OF CONTENTS

I.    THE LEGAL CLAIMS AND LITIGATION RISKS.  (2)

    A.    The Allegedly Uncompensated Time.  (2)

    B.    Most Merchandisers Work Part-Time.  (3)

    C.    The FLSA and PMWA Do Not Allow for Damages During Approximately 82% of the Weeks in Question.  (4)

    D.    The PWPCL Claim Presents Significant Litigation Risks.  (5)

    E.    The Unjust Enrichment Claim Presents Significant Litigation Risks.  (6)

    F.    The Generic Litigation Risk:  The Difficulty of Proving Unpaid Work Hours.  (7)

II.   MEDIATION AND SETTLEMENT.  (8)

    A.    Mediation.  (8)

    B.    The Agreement.  (9)

        1.    The Settlement Class/Collective.  (9)

        2.    Monetary Payments Under the Settlement.  (9)

        3.    The Release.  (10)

III.  ARGUMENT.  (10)

    A.    Preliminary Approval Is Warranted.  (10)

    B.    The Class Notice Plan Should Be Approved.  (14)

    C.    The Court Should Certify the Settlement Class.  (15)

        1.    Rule 23(a)(1)'s Numerosity Requirement is Satisfied.  (16)

        2.    Rule 23(a)(2)'s Commonality Requirement is Satisfied.  (16)

        3.    Rule 23(a)(3)'s Typicality Requirement is Satisfied.  (17)

        4.    Rule 23(a)(4)'s Adequacy Requirement is Satisfied.  (18)

        5.    Rule 23(b)(3) is Satisfied.  (18)

a.      Common Questions Predominate.  (18)

b.      A Class Action is Superior to Other Methods.  (19)

D.     The Court Should Appoint the Undersigned Firms as Interim Class Counsel.  (20)

E.      Conditional Certification of the FLSA Collective is Warranted.  (21)

IV.     CONCLUSION.  (22)

Plaintiffs Donald Cikra, Maryann Sonnett, Colleen Carlock, Gail Richmond, Caralee Brush, and Mary Hurtado ("Plaintiffs") respectfully submit this brief in support of their "Unopposed Motion for Preliminary Approval of the Class/Collective Action Settlement, Conditional Certification of the Proposed Settlement Class/Collective, and Appointment of Interim Class Counsel" ("Motion").  A copy of the executed "Class/Collective Action Settlement Agreement" ("Agreement") is attached.  <u>See</u> Doc. 32-1.  Defendant LaMi Products, LLC ("LaMi") does not oppose this Motion.  <u>See</u> Doc. 32-4.

As discussed herein, the settlement creates a non-reversionary settlement fund of $1.55 million to be distributed to Plaintiffs, all putative class/collective members who file settlement claims, and Plaintiffs' counsel.  The settlement resolves hotly disputed legal claims, enables Plaintiffs and the putative class/collective to avoid substantial litigation risks, was negotiated at arms-length with the assistance of retired U.S. Magistrate Judge Diane Welsh, and contemplates attorney's fees falling below 30% of the total settlement fund.  As such, the settlement "falls within the range of possible approval," <u>In re National Football League Players' Concussion Injury Litigation</u>, 301 F.R.D. 191, 197-98 (E.D. Pa. 2014), and warrants preliminary approval, <u>see</u> Section III.A <u>infra</u>.  Later, after completion of the settlement notice process and the final approval hearing, the Court can evaluate whether final approval of the settlement is warranted.

In addition, Plaintiffs submit that the putative class/collective should be conditionally certified in order to facilitate the notice and claim process contemplated by the Agreement.  <u>See</u> Sections III.C and E <u>infra</u>.  While the Court's final certification ruling will be decided at the post-notice final approval stage, Plaintiffs have presented evidence sufficient to establish that certification is likely.

Finally, the undersigned law firms should be appointed interim class counsel for purposes

1

of overseeing the notice and claim process contemplated by the Agreement.  <u>See</u> Section III.D <u>infra</u>.  Both firms have substantial experience litigating wage and overtime class actions and have been appointed class counsel by federal courts throughout the United States.

## I.       THE LEGAL CLAIMS AND LITIGATION RISKS

In this "hybrid" class/collective action lawsuit, Plaintiffs allege that LaMi failed to pay them and other employees holding the Merchandiser job title for all compensable work time under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.*, and the doctrine of unjust enrichment.[1]  As discussed below, the validity and potential value of these claims is hotly disputed:

### A.       The Allegedly Uncompensated Time.

Plaintiffs were previously employed by LaMi as Merchandisers.  <u>See</u> Amended Complaint ("Am. Cpl.") (Doc. 30) at ¶¶ 4-9.  As such, their job duties included delivering retail items to stores, taking inventory, and setting up item displays.  Merchandisers generally are paid an hourly wage and assigned to a group of stores within a geographic territory.  <u>See</u> <u>id.</u> at ¶¶ 11-13.

In determining Merchandisers' compensable work hours, LaMi generally follows a

---

[1]   Although Plaintiffs and other Merchandisers worked in various states, it is undisputed: that the compensation policies and practices challenged in this lawsuit were administered from LaMi's Huntington Valley, PA headquarters; that all Merchandisers' time, compensation, and payroll records are maintained at LaMi's Pennsylvania headquarters; and that all paychecks, paystubs, IRS W-2 forms, and other payroll documents are generated from and bear the address of LaMi's Pennsylvania headquarters.  <u>See</u> Amended Complaint (Doc. 30) at ¶¶ 14-16.  As such, LaMi is required to comply with Pennsylvania wage laws in paying all Merchandisers, regardless of the Merchandiser's work location.  <u>See</u> <u>Truman v. DeWolff, Boberg & Associates, Inc.</u>, 2009 U.S. Dist. LEXIS 57301, *4-5 (W.D. Pa. July 7, 2009); <u>Friedrich v. U. S. Computer Systems, Inc.</u>, 1996 U.S. Dist. LEXIS 775, *22-23 (E.D. Pa. Jan. 22, 1996).

companywide policy whereby Merchandisers automatically receive payroll credit for predetermined blocks of time allocated to each store visit.  See Am. Cpl. at ¶ 18.  For example, a Merchandiser who visits and works at three stores on a particular day might receive 1.5 hours of payroll credit for her first store visit, 2.25 hours of payroll credit for her second store visit, and 2.5 hours of payroll credit for her third store visit.  In this example, the Merchandiser would be paid for working 6.25 (1.5 + 2.25 + 2.5) hours on this particular day.

LaMi contends that the above policy often results in Plaintiffs and other Merchandisers being paid for ***more*** hours than they actually work.  This is because, according to LaMi, the payroll hours allotted to the stores generally "build in" an extra cushion of time that, under normal circumstances, exceeds the amount of time required for the Merchandiser to complete all store-related work as well as any travel or other activities associated with store visits.  Moreover, LaMi asserts that, on those occasions when special circumstances require a Merchandiser to work in a store beyond the allotted hours, the Merchandiser is expected to record (and be paid for) the extra time by denoting the time on a simple form.

Plaintiffs disagree.  According to Plaintiffs, the payroll hours allotted to each store do not always encompass Merchandisers' actual work hours.  In particular, Plaintiffs allege that time spent performing the following activities was not always captured by the times allotted by LaMi: (i) completing paperwork outside of the stores; (ii) readying unsold inventory for shipment to Defendant's corporate headquarters; (iii) working in the stores beyond the allotted time; and (iv) traveling between stores.  See Am. Cpl. at ¶ 19.  Plaintiffs further allege that Merchandisers are generally discouraged from requesting payment for time worked in excess of the allotted hours.

### B.    Most Merchandisers Work Part-Time.

Even if Plaintiffs can prove some uncompensated time, the frequency and duration of

such time is heavily dependent on the number of stores visited by the Merchandiser each day.

For example, a Merchandiser who visits only one store on a particular day cannot possibly have

spent time traveling between stores.  Nor would it be likely that the single store visit triggered

any significant paperwork or shipping obligations.

Several of the originating Plaintiffs – in particular Donald Cikra, Maryann Sonnett, and

Mary Hurtado – worked full-time hours and often visited multiple stores in single day.

However, the great majority of Merchandisers worked on a part-time basis.  In particular, during

discovery, Plaintiffs' counsel analyzed Merchandiser daily activity records for a random

sampling of 1,377 workdays.  This analysis demonstrated that, generally speaking,

Merchandisers are part-time workers who simply do not visit many stores.  In particular, during

41.68% of the analyzed days, the Merchandiser visited only one store.  Also, during 77.85% of

the analyzed days, the Merchandisers visited two or fewer stores.

**C.     The FLSA and PMWA Do Not Allow for Damages During Approximately
         82% of the Weeks in Question.**

It is well established that, absent a minimum wage violation, the FLSA and PMWA only

provide relief for workweeks in which allegedly uncompensated time arises above the 40-hour

overtime threshold.  Put differently, the FLSA and PMWA provide no relief to a $10/hour

employee who, during a particular week, is paid for working 36 hours even though she actually

works 38 hours.  The Third Circuit recently endorsed this rule for FLSA claims, see Davis v.

Abington Memorial Hospital, 765 F.3d 236, 243-44 (3d Cir. 2014), and this Court has extended

the rule to PMWA claims, see Ford-Green v. NHS, Inc., 106 F. Supp. 3d 590, *53 (E.D. Pa.

2015).

The above rule greatly diminishes the value of this lawsuit for the great majority of

workweeks covered by the class period.  Based on Plaintiffs' counsel's extensive analysis of

4

classwide payroll data, it appears that class members were credited with working under 35 hours during approximately 82% of all workweeks during the class period.[2]  In Plaintiffs' counsel's view, the FLSA and PMWA can offer no relief during these weeks.

###    D.    The PWPCL Claim Presents Significant Litigation Risks.

As just discussed, the FLSA and PMWA have no applicability to approximately 82% of the workweeks covered by the class period.  Thus, for all of these "part-time" workweeks, a Plaintiff or class/collective member must recover under alternative legal theories that lack any basis in the overtime rights laws.  These theories – which in this lawsuit arise under the PWPCL and the doctrine if unjust enrichment – present real challenges for workers and their lawyers in wage rights litigation.

The primary difficulty with Plaintiffs' PWPCL claim – Count III of the Amended Complaint – is that, in well over 20 separate opinions, a clear majority of judges of this Court have taken the position that such claims must be predicated on a ***contractual*** right to the allegedly unpaid wages.  See, e.g., Calli v. ARC Maintenance, Inc., 2016 U.S. Dist. LEXIS 6923, *22-24 (E.D. Pa. Jan. 21, 2016) (Leeson, J.) (citing cases); Mackerth v. Kooma, Inc., 2015 U.S. Dist. LEXIS 63143, *27-30 (E.D. Pa.. May 14, 2015) (Pappert; J.) (citing cases); Drummond v. Herr Foods, Inc., 2014 U.S. Dist. LEXIS 2409, *5-11 (E.D. Pa. Jan. 9, 2014) (Shiller, J.) (citing cases).  To the undersigned's knowledge, only Judge Rufe has adopted the position that an employee can pursue a PWPCL claim in the absence of a contractual entitlement to the unpaid wages or an underlying PMWA violation.  See Moser v. Papadopoulos, 2011 U.S. Dist. LEXIS 64716, *12 (E.D. Pa. June 15, 2011) (characterizing "the WPCL as a vehicle for employees to

---

[2]   Moreover, class members were credited with working under 20 hours during over 50% of all weeks.

recover unpaid wages, regardless of the source of the employer's obligation to pay the wages").[3]

Here, it would be very difficult for Plaintiffs and the class members to establish a *contractual* right to be paid for hours worked beyond the hours that LaMi allotted to each store visit.  In fact, such a purported contractual arrangement would contradict LaMi's longstanding and undisputed compensation policy.  Thus, to pursue PWPCL claims for the 82% of workweeks without a viable FLSA or PMWA claim, Plaintiffs would need to convince this Court to go against the great weight of legal authority in this district.  While the undersigned believes strongly that Judge Rufe's <u>Moser</u> opinion correctly interprets the PWPCL, he also understands from first-hand experience that convincing judges to follow <u>Moser</u> is highly unlikely in the absence of further appellate guidance.

### E.   The Unjust Enrichment Claim Presents Significant Litigation Risks.

Plaintiffs' only other legal claim that might cover the approximately 82% of workweeks not covered by the FLSA or PMWA arises under the doctrine of unjust enrichment.  <u>See</u> Am. Cpl. at Count IV.  The Pennsylvania Superior Court has summarized the unjust enrichment doctrine as follows:

> "Unjust enrichment" is essentially an equitable doctrine.  Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred.  The elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

<u>Mitchell v. Moore</u>, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999)

---

[3]   A few courts have stated that a PWPCL claim can be predicated on an underlying PMWA violation.  <u>See</u> <u>Drummond</u>, 2014 U.S. Dist. LEXIS 2409, at *5-7 (citing cases).  But that is no help to Plaintiffs and the class members for the approximately 82% of weeks in which there can be no PMWA violation.  <u>See</u> Section I.C <u>supra</u>.

Here, it would be difficult for Plaintiffs to establish that LaMi benefitted from the challenged compensation policies or that the policies are inequitable.  As previously noted, LaMi would present evidence that Merchandisers often completed their in-store work well within the allotted hours and that, as a result, Merchandisers often were paid for more hours than they actually worked.  LaMi also would argue that Merchandisers agreed to be compensated based on allotted hours and that, in the absence of such an agreement, LaMi would have paid Merchandisers a lower hourly pay rate.  While Plaintiffs would vigorously dispute LaMi's arguments, they recognize that the arguments can be convincing to a factfinder.

  **F.**  **The Generic Litigation Risk:  The Difficulty of Proving Unpaid Work Hours.**

In lawsuits alleging "off-the-clock" work, plaintiffs can run into difficulty proving that the employer knew the uncompensated work was being performed.  <u>See</u>, <u>e.g.</u>,  <u>Barvinchak v. Indiana Regional Medical Center</u>, 2007 U.S. Dist. LEXIS 72805, *34-36 (W.D. Pa. Sep. 28, 2007) ("In order to recover for uncompensated overtime work under the FLSA, the plaintiff must prove that the defendant had knowledge, either actual or constructive, of the plaintiff's overtime work.").

Here, all of the asserted legal claims carry a risk that Plaintiffs may not be able to prove LaMi's awareness of the allegedly uncompensated work.  As already stated, LaMi will assert that it believed that the existing compensation policies accounted for all of the Merchandisers' work hours.  Also, LaMi points to evidence that, when Merchandisers reported working beyond their allotted hours, they were, in fact, paid extra.  Plaintiffs believe that they could defeat these arguments.  At the same time, however, Plaintiffs understand that the arguments carry significant risk.

## II.      MEDIATION AND SETTLEMENT

### A.      Mediation.

During the January 27, 2016 initial case management conference, the parties informed the Court that settlement might be possible after the exchange of discovery and analysis of classwide payroll data.  Soon thereafter, the parties agreed that settlement discussions might be fruitful and retained retired Eastern District Magistrate Judge Diane Welsh to serve as a third-party mediator.

In the months that followed, LaMi provided to Plaintiffs' counsel electronic payroll data for all Merchandisers employed during the entire class period.  LaMi also produced thousands of pages of handwritten Merchandiser activity reports, which Plaintiffs' counsel used to cross-check the accuracy of the electronic data.  LaMi also produced all documents pertaining to the challenged compensation practices.

As already mentioned, Plaintiffs' counsel performed an extensive analysis of the payroll data and documents.  That data revealed that the approximately 2,570 class members worked fewer than 35 hours per week during approximately 82% of all workweeks.  Moreover, Plaintiffs' counsel was able to estimate that Merchandisers visited only one store during approximately 41% of all workdays and visited two or fewer stores during approximately 77% of all workdays.  As such, even if the hours allotted by LaMi did not always compensate Merchandisers for all activities associated with store visits (e.g. traveling between stores, filling out paperwork, and boxing up unsold inventory) the amount of uncompensated time could be minimal during days and weeks in which few stores were visited.

On March 25, 2016, after analyzing all of the evidence, the parties participated in an all-day mediation with Judge Welsh.  Prior to mediation, the parties exchanged detailed position statements.  The mediation was attended by defense counsel, two of LaMi's highest-ranking

executives, Plaintiffs' counsel, and Plaintiffs Cikra and Sonnett.  The other originating Plaintiffs were available by phone.  The mediation lasted over 10 hours and, after substantial arms-length bargaining, resulted in the settlement outlined below:

**B.      The Agreement**

The Agreement's material terms are briefly summarized below.

**1.      The Settlement Class/Collective**

For purposes of settlement only, the parties have agreed to the certification of the following class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3): All individuals employed by Defendant LaMi Products, LLC in the United States as Merchandisers during any time between November 17, 2012 and May 14, 2016.  Likewise, the parties have agreed to the conditional certification of an FLSA collective pursuant to 29 U.S.C. § 216(b) that is identical to the Rule 23 class.  Approximately 2,570 LaMi Merchandisers are potentially covered by the settlement.

**2.      Monetary Payments Under the Settlement**

LaMi has agreed to create a total settlement fund of $1,550,000.00 to resolve the class and collective claims in this action.  See Agreement at p. 3 (defining "Maximum Settlement Amount").  The settlement is *non-reversionary*, meaning that none of the settlement fund will revert back to LaMi.

The Net Settlement Amount – assuming the Court approves all requested service awards and attorneys' fees/costs – totals $1,050,000.00 and will be proportionately distributed to Merchandisers who file timely claim forms to participate in the settlement.  See Agreement at ¶ 9.  Settlement participants will receive a payment based on the following allocation formula:

{$50} *plus* {[(Net Settlement Amount) *minus* (Claimants X $50 )] *multiplied by* [(Payment Points Awarded to Individual Claimant) *divided by* (Total Payment

> Points Awarded to All Claimants)**]}**.  For purposes of this formula, each Claimant will be awarded Payment Points for each Credited Work Hour during each week within the Class Period as follows:  (a) 1 Payment Point will be awarded for each Credited Work Hour up to 35 hours; (b) 1.5 Payment Points will be awarded for the 36th and 37th Credited Work Hour; (c) 2 Payment Points will be awarded for the 38th and 39th Credited Work Hour; and (d) 3 Payment Points will be awarded for each Credited Work Hour over 40.

Id. at pp. 1-2 ("Payout Amount").  As indicated, since individuals who worked more than 40 hours in a week have claims for overtime compensation that are far superior to the other claims, see Section I supra, the above payout formula is weighted in a manner that provides  increasingly greater value to hours worked beyond 35 per week week. Id.  In this way, Merchandisers who worked the most hours – especially overtime hours – stand to receive a larger portion of the settlement than class members who only worked for LaMi for a short period of time and/or rarely approach the overtime threshold.

It is unlikely that 100% of the class members will participate in the settlement.  However, the table attached as Appendix A shows the anticipated settlement payouts for 67 randomly selected class members.  As indicated, the payouts range from a high of $2,740.79 to a low of $54.11.  Crucially, these are *minimum* payout amounts because they are based on a 100% participation rate.  At the final approval stage – after the settlement claims process has run its course – Plaintiffs counsel will provide the Court with actual payout amounts.

In addition, subject to Court approval, $35,000 will be distributed among the six named Plaintiffs as service awards in recognition of their efforts on behalf of other Merchandisers.  See Agreement at ¶ 10.  Also subject to Court approval, Plaintiffs' counsel will seek an award of $465,000 representing thirty percent (30%) of the total settlement fund for accumulated attorney's fees and expenses, including the cost of administering the settlement notice, claims, and distribution process.  Id. at ¶ 11.  Any disapproved service awards, fees, or costs will be

allocated to the participating class members by increasing the "Net Settlement Amount" under

the above payout formula.  See id. at p. 2 (defining "Net Settlement Amount").

### 3.    The Release

In exchange for the above consideration, Merchandisers who do not exclude themselves

from the settlement will release LaMi from any and all legal or equitable claims arising during

the class period alleging non-payment of minimum wage, regular, overtime wages and/or

expenses under the Pennsylvania Minimum Wage Act, 43 P.S §§ 333.101, *et. seq.*, the

Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal,

state, or local statute, regulation, rule, or common law theory other than the FLSA.  Those class

members who file claim forms will also release LaMi from all claims under the FLSA during the

class period. See Agreement at ¶ 4.

## III.    ARGUMENT

### A.    Preliminary Approval Is Warranted.

Federal courts must approve class action settlements in order to ensure that class

members receive sufficient notice of the settlement and that the settlement is "fair, reasonable,

and adequate."  Fed. R. Civ. P. 23(e)(2).  Approval of a class action settlement entails a two-step

process.  Initially, the court makes a preliminary determination of the settlement's fairness. If the

court preliminarily determines that the settlement is fair, settlement class members are notified of

the settlement and a final fairness hearing is scheduled.  Later, at the final fairness hearing, the

court undertakes a more thorough evaluation of the settlement's fairness, reasonableness, and

adequacy.  See generally In re: Automotive Refinishing Paint Antitrust Litig., 2004 U.S. Dist.

LEXIS 29163, *2-5 (E.D. Pa. May 10, 2004); MANUAL FOR COMPLEX LITIGATION, FOURTH, §

21.632.

Preliminary approval merely "establishes an initial presumption of fairness," In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig, 55 F.3d 768, 785 (3d Cir. 1995), and confirms that "the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies," In re Automotive Refinishing Paint Antitrust Litig., 2003 U.S. Dist LEXIS 4641, *2-3 (E.D. Pa. Mar. 17, 2003).  At the preliminary approval stage, "the question is not whether the settlement merits final approval but whether it 'discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'"  Hanlon v. Palace Entertainment Holdings, LLC, 2012 U.S. Dist. LEXIS 364, *14 (W.D. Pa. Jan. 3, 2012) (quoting Mehling v. New York Life Ins. Co., 246 F.R.D. 467, 472 (E.D. Pa. 2007)); see also In re Traffic Executive Assoc., 627 F.2d 631, 634 (2d Cir. 1980) (at preliminary approval stage court determines "what might be termed 'probable cause' to submit the proposal to Settlement Class members and hold a full-scale hearing as to its fairness"); Mehling, 246 F.R.D. at 472 ("[A] settlement falls within the 'range of possible approval,' if there is a conceivable basis for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied.").  As Judge Brody recently observed:

> [i]n deciding whether to grant preliminary approval, a court determines whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.

In re National Football League Players' Concussion Injury Litigation, 301 F.R.D. 191, 197-98 (E.D. Pa. 2014).

Applying the above principles to this lawsuit, the Court should preliminarily approve the proposed settlement.  The settlement is the product of arms-length bargaining conducted after

extensive analysis of the relevant discovery record and class payroll data and after an all-day

mediation with Judge Welsh.  Such a process weighs heavily in favor of preliminary approval.

See, e.g., Vines v. Covelli Enterprises, 2012 U.S. Dist. LEXIS 170870, *16-18 (W.D. Pa. Nov.

30, 2012) ("The court notes that the settlement in this case was the product of an arms-length

negotiation, conducted in good faith in front of an experienced and respected mediator who is a

former member of this court.").

Under the Agreement, LaMi has agreed to pay $1,550,000.00 to settle Plaintiffs' claims

for unpaid wages.  The settlement is entirely *non-reversionary*.  The Net Settlement Fund of

$1,050,000.00 will be distributed to class members who return simple claim forms

accompanying a clearly worded Notice form that describes the settlement and tells each class

member his/her minimum anticipated payment amount.  See Agreement at Exhibits A-B.

Importantly, the net settlement fund is being distributed in proportion to the number of

hours each participating merchandiser worked, while taking into account the fact that hours

worked beyond 35 each week have greater value due to the superior PMWA/FLSA overtime

rights claims.  In addition, under the payout formula, all class members are guaranteed a

minimum $50 payment.  More significantly, even assuming a 100% participation rate, class

members will receive *average* payouts of over $400, and class members who worked significant

hours or for significant durations will recover *thousands* of dollars.  See Appendix A.

These payouts represent a significant recovery for class members who, absent settlement,

would be left with tenuous legal claims.  In this regard, the Court is respectfully referred to

Section I of this brief, which discussed some of the litigation risks.

Moreover, although the Court will fully scrutinize the requested service awards and

attorney's fees at the final approval stage, it is notable that neither request falls outside of the

mainstream.  The service awards, which range from $12,500 to $2,500, <u>see</u> Agreement at ¶ 10, are in-line with awards in similar cases.  <u>See</u>, <u>e.g.</u>, <u>Tavares v. S-L Distribution Co., Inc.</u>, 2016 U.S. Dist. LEXIS 57689, *35-38 (M.D. Pa. May 2, 2016) (approving $15,000 service awards). The same can be said for the requested fees, which will constitute approximately 28% of the settlement fund after reductions for expenses.  <u>See</u> <u>Creed v. Benco Dental Supply Co.</u>, 2013 U.S. Dist. LEXIS 132911, *17 (M.D. Pa. Sept. 17, 2013)   ("an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit").

    In sum, the proposed settlement warrants preliminarily approval because it does not "disclose[] [any] grounds to doubt its fairness or [have any] other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys," and "it appears to fall within the range of possible approval." <u>National Football League</u>, 301 F.R.D. at 197-98.

    **B.      The Class Notice Plan Should Be Approved.**

    When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). This Court has observed that "notice by first-class mail … has long been considered to satisfy due process in the class action context." <u>Dugan</u>, 2013 U.S. Dist. LEXIS 136305, at *16-17.

    Here, the notice process set forth in the Agreement warrants Court approval.  The notice and claims process will be overseen by Plaintiffs' counsel, who are very experienced in administering class action wage settlements.  Promptly after obtaining preliminary approval, Plaintiffs' counsel will mail to each class member a notice and claim form packet using contact information provided by LaMi.  <u>See</u> Agreement at ¶ 6.  For any notice packets that are returned

as undeliverable, Plaintiffs' counsel will identify updated mailing addresses using a proprietary database and promptly resend the notice packets to the correct address.  Id.  Merchandisers will have 70 days to return a timely claim form.  Those Merchandisers who wish to object or opt-out of the settlement shall have 63 days from the date of the preliminary approval order to mail their request in writing.  Id. at ¶ 7-8.  The notice that each individual class member will receive is written in clear language and accurately describes the settlement, the scope of the release, and the process Merchandisers must follow to participate, object, or be excluded from the settlement.  See id. at Exhibit A ("Notice of Settlement").  In sum, the notice and claim process is fair and reasonable and should be approved.

      **C.**     **The Court Should Certify the Settlement Class.**

      In connection with preliminary approval, Plaintiffs request that the Court conditionally certify for settlement purposes the following class under Rule 23: "All individuals employed by LaMi Products, LLC in the United States as Merchandisers between November 17, 2012 and May 14, 2016."  At the final approval stage, the Court will revisit class certification.

      Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues," and serves "important objectives" such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims."  In re GMC, 55 F.3d at 783-84 (internal quotations omitted).  "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."  Id. at 784 (quoting Deposit Guarantee Nat'l Bank v. Roper,

455 U.S. 326, 339 (1980)).

As the Third Circuit has observed:

[B]efore approving a class settlement agreement, "a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 341 (3d Cir. 2010). Rule 23(a) contains four threshold requirements, which every putative class must satisfy: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); see also [Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997)]. Upon finding each of these prerequisites satisfied, a district court must then determine that the proposed class fits within one of the categories of class actions enumerated in Rule 23(b).

Sullivan v. DB Invs., Inc., 667 F.3d 273, 296 (3d Cir. 2011).  Here, Plaintiffs seek class

certification under Rule 23(b)(3), which provides that:

A class action may be maintained if … (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Here, the requirements for class certification are met, and both parties have agreed to seek

certification of a class for settlement purposes.

### 1.     Rule 23(a)(1)'s Numerosity Requirement is Satisfied

Rule 23(a)(1)'s numerosity requirement is satisfied where a class is "so numerous that

joinder of all members is impracticable."  Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 595

(3d Cir. 2012).  Here, numerosity is easily met because the class includes approximately 2,570

individuals.

### 2.     Rule 23(a)(2)'s Commonality Requirement is Satisfied

Rule 23(a)(2)'s commonality requirement "may be satisfied by a single common issue"

and therefore "the requirement is usually easily met in most cases."  Hanlon, 2010 U.S. Dist.

LEXIS 9029, at *8; see In re: Schering Plough, 589 F.3d 585, 597 (3d Cir. 2009) (commonality

requirement "satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class."). Moreover, "[c]ommonality is more easily established when plaintiffs assert an economic, as opposed to a physical[] injury because few if any individual proof issues are expected to arise." Young, 2014 U.S. Dis. LEXIS 62931, at *7.

Here, the commonality requirement is satisfied because, *inter alia*, each of the proposed class members worked as Merchandisers during the relevant period and were subjected to LaMi's common practice of compensating Merchandisers based on predetermined blocks of time assigned to each store visit. This is precisely the type of common pay practice that warrants class certification.

### 3.     Rule 23(a)(3)'s Typicality Requirement is Satisfied

Rule 23(a)(3)'s typicality inquiry "is intended to assess whether the action can be efficiently maintained as a class action and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994); accord Stewart v. Abraham, 275 F.3d 220, 227 (3d Cir. 2001); In Re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 311 (3d Cir. 1998). Lawsuits challenging the same conduct which "affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Baby Neal, 43 F.3d at 58. "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." Id.; accord Stewart, 275 F.3d at 227-28.

Here, typicality exists because Plaintiff and every class member shares the same interest of recovering unpaid wages from LaMi based on the instant challenge to LaMi's common pay

policy.

#### 4.      Rule 23(a)(4)'s Adequacy Requirement is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy "depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff must not have interests antagonistic to those of the class." Weiss v. York Hospital, 745 F.2d 786, 811 (3d Cir. 1984), cert. denied, 470 U.S. 1060 (1985) (internal quotations omitted).  Here, the adequacy requirement is met because the named Plaintiffs share a common interest with class members in recovering unpaid wages.  Moreover, Plaintiffs' counsel are very experienced in litigating class action wage and hour lawsuits on a class-wide basis.  See generally Declaration of Peter Winebrake (Doc. 32-2); Declaration of Harold Lichten (Doc. 32-3).

#### 5.      Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy." Here, the claims satisfy the requirements of Rule 23(b)(3).

#### a.      Common Questions Predominate

The predominance requirement is met when "questions of law or fact common to class members predominate over questions affecting only individual members…." Fed. R. Civ. P. 23(b)(3).  The Third Circuit has explained that predominance is satisfied "[a]s long as a sufficient constellation of common issues binds class members together." In re Linerboard Antitrust Litig., 305 F.3d 145, 162 (3d Cir. 2002) (internal quotations omitted).  As the court in Hanlon observed:

18

> The predominance inquiry examines "whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *In re Community Bank*, 418 F.3d at 308-09 (citing *Amchem*, 521 U.S. at 623-24). "A proper predominance inquiry 'trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement.'" *Id.* (quoting *Amchem*, 521 U.S. at 623). In this vein, "a predominance analysis 'is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims of defenses of the class.'" *Id.* (quoting *Amchem*, 521 U.S. at 623 n. 18). Here, as discussed in the Rule 23 analysis, all the claims arise from the same factual predicate, i.e. all potential class members suffered from the same alleged injury. As a result, the court finds that the predominance requirement has been satisfied.

2010 U.S. Dist. LEXIS 9029, at *9-10.  Here, predominance is met because all class members share a common set of core, predominant facts.  All class members worked as Merchandisers under LaMi's common compensation policy, and they challenge the legality of such policy. Moreover, it is undisputed that all merchandisers shared common job duties, submitted common activity reports to LaMi's headquarters, and had their payroll data maintained in a uniform and centralized manner.  This is precisely the type of unpaid wage case that lends itself to classwide litigation.  See, e.g., Tyson Foods, Inc. v. Bouaphakeo, __ U.S. __, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016).

### b.   A Class Action is Superior to Other Methods

In addition to the predominance requirement, Rule 23(b)(3) "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," Prudential, 148 F.3d at 316, and the Rule "sets out several factors relevant to the superiority inquiry," id. at 315-16.  Applying these factors, it becomes clear that Rule 23(b)(3)'s superiority requirement is satisfied here.

First, Rule 23(b)(3)(A) counsels against class certification where individual class members have a strong interest in "individually controlling the prosecution" of separate actions. This generally arises in lawsuits involving "a high degree of emotional involvement, extremely

large [individual] damages claims, and a desire to tailor trial tactics to individual needs."

NEWBERG at §4:29.  This action bears none of these hallmarks.  On the contrary, because

damages are relatively modest for individual Merchandisers compared to personal injury or

breach of contract claims, there is a strong interest in class litigation.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any

litigation concerning the controversy already begun by" class members.  This factor is not

relevant, since no related litigation exists.

Third, Rule 23(b)(3)(C) requires the court to consider the desirability of "concentrating

the litigation of the claims in a particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  Here,

concentration of all claims in the Eastern District of Pennsylvania is both efficient and desirable

because LaMi is headquartered in Huntingdon Valley, Pennsylvania.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in

managing the class action."  Fed. R. Civ. P. 23(b)(3)(D).  This requirement is automatically

satisfied when a case is being certified for settlement purposes.  See Amchem Prods. Inc. v.

Windsor, 521 U.S. 591 (1997).

Based on the above, the proposed settlement class satisfies the requirements of Rule

23(a)-(b) and should be conditionally certified for settlement purposes.

**D.      The Court Should Appoint the Undersigned Firms as Interim Class Counsel.**

A court certifying a class generally must appoint class counsel.  See Fed. R. Civ. P. 23(g).

Here, because the class will not be finally certified until the final approval stage, Plaintiffs

request that their counsel be appointed interim class counsel under Rule 23(g)(3).   At the final

approval stage, the Court can revisit this appointment under the factors described in Rule

23(g)(1).

Here, Plaintiffs request that the law firms of Winebrake & Santillo, LLC and Lichten & Liss-Riordan, P.C., be appointed as class counsel.  As already explained, the undersigned counsel have diligently litigated this action and, after investigation, negotiated a fair settlement. Moreover, both firms are very experienced in litigating wage and hour lawsuits and have been appointed class counsel by many judges.  See generally Declaration of Peter Winebrake (Doc. 32-2); Declaration of Harold Lichten (Doc. 32-3).  As Judge Jones recently observed in another class action handled by these two firms, "class counsel are skilled and experienced litigators who have handled complex employment rights class actions numerous times before.  Tavares, 2016 U.S. Dist. LEXIS 57689, at *43.

### E.      Conditional Certification of the FLSA Collective is Warranted

In addition to the Pennsylvania law claims underlying the Rule 23 class, Plaintiffs assert federal FLSA claims on behalf of:  All individuals employed by Defendant LaMi Products, LLC in the United States as Merchandisers during any time between November 17, 2012 and May 14, 2016.  Plaintiffs seek conditional certification of this collective.

"Under the 'collective action' mechanism, an employee alleging an FLSA violation may bring an action on 'behalf of himself . . . and other employees similarly situated,' subject to the requirement that '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Symczyk v. Genesis Healthcare Corporation, 656 F.3d 189, 192 (3d Cir. 2011) (quoting 29 U.S.C. § 216(b)).  In deciding whether to allow an FLSA claim to proceed as collective action, courts examine whether plaintiffs and members of the proposed collective are "similarly situated."  Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 536 n. 4 (3d Cir. 2012). The initial conditional certification standard is "fairly lenient," see id., and "considerably less stringent" than the class certification analysis under Rule 23, see Goldman v. RadioShack Corp.,

2006 U.S. Dist. LEXIS 2433, *22-25 (E.D. Pa. Jan. 23, 2006). "The FLSA simply requires that the employees be 'similarly situated.' The other factors required in class actions-numerosity, typicality, commonality and predominance-do not apply to collective actions." Id. at *22-23.

For the same reasons set forth above with respect to the stricter Rule 23 analysis, conditional certification is warranted with respect to the settled FLSA claim because Plaintiffs and other Merchandisers performed the same job duties, and have similar claims arising out of LaMi's uniform compensation policy.

## IV.    CONCLUSION

For the above reasons, the Court should grant this Motion and enter the attached proposed order.

Date:  June 22, 2016                                        Respectfully,

/s/ Peter Winebrake
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Harold Lichten
Peter Delano
Lichten & Liss-Riordan, P.C.
729 Boylston Street. Suite 2000
Boston, MA  02116
(617) 994-5800

*For Plaintiffs*

22



## ESTIMATED SETTLEMENT SHARES

| | Total Hours | Total Payment Points | Total Class Share |
|---|---|---|---|
| 1 | 249.25 | 253.38 | $152.46 |
| 2 | 502.43 | 502.70 | $253.27 |
| 3 | 5059.35 | 6654.37 | $2,740.79 |
| 4 | 269.14 | 269.14 | $158.83 |
| 5 | 1191.46 | 1193.91 | $532.78 |
| 6 | 153.26 | 154.26 | $112.38 |
| 7 | 2179.75 | 2193.50 | $936.97 |
| 8 | 257.25 | 257.25 | $154.02 |
| 9 | 378.25 | 409.63 | $215.64 |
| 10 | 1608.92 | 1665.31 | $723.39 |
| 11 | 50.42 | 50.42 | $70.39 |
| 12 | 151.50 | 151.50 | $111.26 |
| 13 | 7.00 | 7.00 | $52.83 |
| 14 | 293.23 | 293.23 | $168.57 |
| 15 | 54.50 | 88.50 | $85.79 |
| 16 | 20.71 | 20.71 | $58.37 |
| 17 | 120.45 | 120.45 | $98.71 |
| 18 | 822.00 | 822.00 | $382.39 |
| 19 | 1007.65 | 1071.28 | $483.19 |
| 20 | 312.25 | 636.75 | $307.48 |
| 21 | 1336.29 | 1346.97 | $594.67 |
| 22 | 219.84 | 278.28 | $162.53 |
| 23 | 474.75 | 720.75 | $341.45 |
| 24 | 116.50 | 134.50 | $104.39 |
| 25 | 11.92 | 11.92 | $54.82 |
| 26 | 342.39 | 342.39 | $188.45 |
| 27 | 12.25 | 12.25 | $54.95 |
| 28 | 149.77 | 149.77 | $110.56 |
| 29 | 620.66 | 620.66 | $300.97 |
| 30 | 277.22 | 277.22 | $162.10 |
| 31 | 2731.68 | 2744.68 | $1,159.85 |
| 32 | 31.10 | 31.10 | $62.58 |
| 33 | 10.16 | 10.16 | $54.11 |
| 34 | 69.00 | 69.50 | $78.10 |
| 35 | 1320.00 | 1485.00 | $650.48 |
| 36 | 54.75 | 54.75 | $72.14 |
| 37 | 67.00 | 92.00 | $87.20 |
| 38 | 265.60 | 266.96 | $157.95 |
| 39 | 37.37 | 37.37 | $65.11 |

| | | |
|---|---|---|
| 40 | 4203.52 | 4559.56 | $1,893.73 |
| 41 | 459.00 | 461.00 | $236.41 |
| 42 | 297.00 | 297.00 | $170.10 |
| 43 | 241.63 | 241.63 | $147.71 |
| 44 | 432.75 | 435.38 | $226.05 |
| 45 | 189.25 | 189.25 | $126.53 |
| 46 | 332.43 | 332.43 | $184.42 |
| 47 | 200.34 | 200.34 | $131.01 |
| 48 | 269.37 | 269.37 | $158.92 |
| 49 | 16.50 | 16.50 | $56.67 |
| 50 | 19.00 | 19.00 | $57.68 |
| 51 | 1934.15 | 1935.15 | $832.51 |
| 52 | 163.50 | 163.50 | $116.11 |
| 53 | 22.50 | 22.50 | $59.10 |
| 54 | 4733.69 | 4975.11 | $2,061.76 |
| 55 | 32.00 | 32.00 | $62.94 |
| 56 | 34.00 | 34.00 | $63.75 |
| 57 | 79.65 | 79.65 | $82.21 |
| 58 | 2327.63 | 2387.02 | $1,015.23 |
| 59 | 112.37 | 112.37 | $95.44 |
| 60 | 1093.11 | 1322.88 | $584.93 |
| 61 | 29.50 | 29.50 | $61.93 |
| 62 | 419.20 | 422.34 | $220.78 |
| 63 | 2108.53 | 2283.73 | $973.46 |
| 64 | 2697.50 | 3384.25 | $1,418.47 |
| 65 | 149.50 | 167.50 | $117.73 |
| 66 | 452.93 | 481.93 | $244.88 |
| 67 | 70.00 | 70.00 | $78.31 |